IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LUMINACE SOLAR MARYLAND, LLC, et al., | * |
| | * |
| Plaintiffs, | |
| | *    Civil Action No. GLR-23-1606 |
| v. | |
| | * |
| TIGO ENERY, INC., | |
| | * |
| Defendant. | |

***

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Tigo Energy, Inc.'s ("Tigo") Partial Motion to Dismiss (ECF No. 10). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023).[1] For the reasons set forth below, the Court will grant the Motion in part and deny it in part.

## I.   BACKGROUND[2]

### A.   Factual Background

This products liability, tort, and contract action arises from an alleged unreasonable risk of death or serious injury presented by Rapid Shutdown Devices ("RSDs") sold by Tigo, a developer and manufacturer of solar energy equipment used for enhancing safety in solar power installations. (1st Am. Compl. ["Am. Compl."] ¶¶ 1, 10, ECF No. 8). The six named Plaintiffs, Luminace Solar Maryland, LLC (fka Constellation Solar Maryland,

---

[1] Accordingly, Tigo's Request for a Hearing (ECF No. 11) is denied.
[2] Unless otherwise noted, the Court takes the following facts from the Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

1

LLC); Solar DG MD Holabird AJCFB, LLC; Solar DG MD Holabird Broening ACC, LLC; Luminace Solar New Jersey, LLC (fka Constellation Solar New Jersey, LLC); Solar DG NJ Building 7, LLC; and Solar DG NJ Building 7II, LLC (collectively, "Plaintiffs"), are developers, owners, and operators of solar photovoltaic energy systems ("PV Systems"). (Id. ¶¶ 5–9, 18). Plaintiffs are responsible for PV Systems installed on the rooftops of buildings at various project sites in Maryland and New Jersey, including businesses, schools, residences, and other institutions. (Id. ¶¶ 5–9, 17).

RSDs are fire safety devices. (Id. ¶ 21). If a person needs to access a rooftop where a PV System is installed, RSDs act as an "on off" switch to quickly de-energize voltages and remove the risk of electrocution. (Id.). These devices are primarily intended to protect firefighters and other first responders who, in the event of a fire, often need to cut holes in the roof or walls of a burning building for ventilation. (Id.). The National Electric Code ("NEC") and the International Fire Code mandate the installation of RSDs in rooftop PV Systems like those at Plaintiffs' project sites. (Id. at 22).

To comply with NEC requirements and protect first responders and the inhabitants of the buildings at their projects from fire risks, Plaintiffs purchased Tigo RSDs and installed them at each site. (Id. ¶ 25). Plaintiffs do not say when they purchased the Tigo RSDs, but state that Tigo represented to them at the time of purchase that Tigo RSDs were "high-quality," "industry leading," and "extremely reliable." (Id. ¶ 26). Tigo also represented to Plaintiffs that its RSDs were tested, certified, and would "operate as intended for safety." (Id. ¶ 27). Plaintiffs relied on these representations in purchasing thousands of

2

Tigo RSDs for use at their project sites. (Id. ¶¶ 27, 32–34). Trained professionals installed the RSDs at each project site according to instructions provided by Tigo. (Id. ¶¶ 28–29).

Tigo warranted that its RSDs were free from defects and would "withstand normal operating conditions and typical wear and tear" when installed properly and used for their intended purpose. (Id. ¶¶ 36–37). However, on or about April 12, 2022, Plaintiffs learned of a Tigo RSD failure at the Harford County Public Schools project site in Aberdeen, Maryland. (Id. ¶ 41). The failed device exhibited "bubbling, charring, and melting," all signs of failure due to a thermal event. (Id.). The failure concerned Plaintiffs, as it indicated that the Tigo RSDs, which were intended to reduce fire risks, could in fact potentially start fires. (Id. ¶ 42). Three more RSDs failed at the Harford County Public Schools project within days, under similar conditions indicating a potential fire risk. (Id. ¶ 43). Plaintiffs later learned that Tigo RSDs had caused fires at sites owned by other developers. (Id. ¶ 42).

Plaintiffs notified Tigo of the RSD failures, and about a month later, in May 2022, Tigo representatives visited the Aberdeen site to investigate the failures. (Id. ¶ 44). Tigo did not provide feedback from the investigation, despite several requests from Plaintiffs, until early June. (Id. ¶¶ 45–46). Tigo's report did not identify a cause for the RSD failures but found that Plaintiffs installed the RSDs according to its guidelines. (Id. ¶ 46). Sixteen thermal RSD failures then occurred at another of Plaintiffs' project sites, of which they informed Tigo on June 21, 2022. (Id. ¶¶ 47–48). Tigo declined to conduct onsite testing. (Id. ¶ 48).

Tigo RSDs across Plaintiffs' project sites continued to fail consistently, with several being "completely incinerated" or showing "signs of extreme overheating." (Id. ¶¶ 49–52).

3

Believing that Tigo RSDs posed a clear and serious threat of death, injury, and significant property damage, Plaintiffs shut down their PV Systems at all Project sites to ensure the safety of the students and other occupants of the sites, thereby incurring significant "costs, business disruptions, and reputational harm." (Id. ¶¶ 53–54). Plaintiffs informed Tigo of the shutdown and asked for assistance identifying the cause of the failures so they could safely re-energize their projects. (Id. ¶¶ 55–56). By September, after twenty-five known failures and no assistance from Tigo in identifying the cause, Plaintiffs finally decided to remove the Tigo RSDs from their projects. (Id. ¶¶ 57–60). After Plaintiffs told Tigo of their plans to remove the RSDs, Tigo advised them not to remove the RSDs until after each one failed, which Plaintiffs believed would expose the project occupants to undue risk of death or serious injury. (Id. ¶ 61). Ultimately, Plaintiffs made costly replacements of all Tigo RSDs at it projects, over 19,000 replacements in total. (Id. ¶¶ 62–69).

Plaintiffs allege that Tigo had actual knowledge of hidden defects with its RSDs posing a substantial risk of death or serious personal injury prior to the April 2022 thermal failure at the Harford County Schools project. (Id. ¶¶ 70–71). They allege that despite learning of the defects—and several fires and thermal incidents caused thereby—through "field reports, investigations, complaints, and litigations," Tigo failed to warn Plaintiffs and willfully disregarded foreseeable harms from its defective RSDs. (Id. ¶¶ 70–76).

**B.   Procedural History**

Plaintiffs filed their original Complaint in the Circuit Court of Maryland for Harford County on May 10, 2023. (ECF No. 2). On June 14, 2022, Plaintiffs removed the action to this Court on the basis of diversity jurisdiction. (Notice of Removal at 4, ECF No. 1). By

consent, Plaintiffs filed an Amended Complaint on July 21, 2023. (ECF No. 8). The Amended Complaint contains the following products liability, tort, and contract claims: strict products liability for design defect, manufacturing defect, and failure to warn (Count I); negligence (Count II); negligent failure to warn, concealment, and misrepresentation (Count III); fraudulent concealment and intentional failure to warn (Count IV); breach of express warranty (Count V); breach of implied warranties of fitness for a particular purpose and merchantability (Count VI); breach of implied contract (Count VIII);[3] unjust enrichment (Count IX); and tortious interference with Plaintiffs' contracts (Count X). (Am. Compl. ¶¶ 82–204). Plaintiffs seek compensatory damages, including costs and attorneys' fees, (id. at 29), and they also request punitive damages as to all Counts, (id. ¶¶ 205–11). On August 21, 2023, Tigo filed the instant Partial Motion to Dismiss Count IV and the request for punitive damages. (ECF No. 10). Plaintiffs filed an Opposition on September 21, 2023, (ECF. No. 14). Tigo filed a Reply on October 20, 2023. (ECF No. 19).

## II.   DISCUSSION

**A.   Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is

---

[3] The Amended Complaint does not contain a seventh count.

entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.  Analysis**

   **1.  Count IV – Fraudulent Concealment and Intentional Failure to Warn**

In Count IV of the Amended Complaint, Plaintiffs allege that Tigo failed to disclose known, serious, and nonobvious risks posed by its defective RSDs, and that in justifiable

6

reliance on Tigo's concealment, Plaintiffs purchased and installed Tigo RSDs—which they were later required to replace at significant cost. (Am. Compl. ¶¶ 137–42). Tigo argues for dismissal of Count IV on the grounds that the Plaintiffs have not plead the factual allegations supporting their fraudulent concealment claim with sufficient particularity to satisfy the heightened pleading standard for fraud claims under Federal Rule of Civil Procedure 9(b). (Mem. Supp. Mot. Dismiss ["Mot."] at 4–5, ECF No. 10-1). Plaintiffs counter that a relaxed particularity standard under Rule 9(b) applies to claims of fraudulent concealment as opposed to claims of fraudulent misrepresentation, but that even under the heightened standard put forth by Tigo, the allegations in Count IV are sufficient to survive dismissal. (Pls.' Resp. Opp'n Def.'s Mot. Dismiss ["Opp'n"] at 9–13, ECF No. 14).

At bottom, the Court agrees with Tigo. Even under the relaxed particularity standard that applies to claims of fraudulent concealment under Maryland law, the allegations in Count IV of Plaintiffs' Amended Complaint are insufficient to state a fraudulent concealment claim. Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud. Cozzarelli v. Inspire Pharm. Inc., 549 F.3d 618, 629 (4th Cir. 2008). The rule states: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud[.]" Fed.R.Civ.P. 9(b). Under the rule, a plaintiff alleging claims that sound in fraud "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 731 (4th Cir. 2010) (quoting U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008)). In other words, "Rule 9(b) requires

plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." Crest Constr. II, Inc. v. Doe, 660 F.3d 346, 353 (8th Cir. 2011) (quoting Summerhill v. Terminix, Inc., 637 F.3d 877, 880 (8th Cir. 2011)).

As the Fourth Circuit has explained, Federal Rule of Civil Procedure 9(b) serves several salutary purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc., 755 F.Supp. 1055, 1056–57 (S.D.Ga. 1990)). By its terms, however, Rule 9(b) permits a general averment of aspects of fraud that relate to a defendant's state of mind. It states, in part: "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). Moreover, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison, 176 F.3d at 784.

The parties do not dispute that Maryland law applies in this case. Under Maryland law, the particularity requirements of Rule 9(b) generally "take a different form" in cases where a plaintiff alleges concealment or an omission of material facts. Piotrowksi v. Wells Fargo Bank, No. DKC-11-3758, 2013 WL 247549, at *5 (D.Md. Jan. 22, 2013).

Specifically, this Court has applied the requirements "less strictly . . . with respect to claims of fraud by concealment," as "an omission 'cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.'" Walls v. Sierra Pac. Mortg. Co., Inc., No. GLR-19-595, 2021 WL 252544, at *6 (D.Md. Jan. 26, 2021) (quoting Shaw v. Brown & Williamson Tobacco Corp., 973 F.Supp. 539, 552 (D.Md. 1997)); see also Lincoln v. Ford Motor Co., No. JKB-19-2741, 2020 WL 5820985, at *11 (D.Md. Sept. 29, 2020); Wright v. C.R. Bard, Inc., No. PX-1:19-3029, 2020 WL 3050733, at *4 (June 8, 2020). Thus, although a plaintiff claiming fraudulent concealment must "identify with some precision . . . the circumstances of active concealments," Johnson v. Wheeler, 492 F.Supp.2d 492, 509 (D.Md. 2007), a complaint satisfies the relaxed standard for fraudulent concealment claims if it is "thorough," pleads "alleged fraudulent behavior with specificity," and if the facts alleged "provide the defendant fair notice of the basis of plaintiff's claim." Lincoln, 2020 WL 5820985, at *11 (quoting Swedish Civ. Aviation Admin. v. Project Mgmt. Enters., Inc., 190 F.Supp.2d 785, 798-99 (D.Md. 2002)). Thus, the relaxed particularity requirement advanced by Plaintiffs is the proper pleading standard for evaluating Plaintiffs' fraudulent concealment claim.

Even under this less stringent standard, however, the allegations in Count IV of the Amended Complaint fall short of stating a plausible claim for fraudulent concealment. To state a claim for fraudulent concealment under Maryland law, a plaintiff must plead facts to establish five elements:

> (1) the defendant owed a duty to the plaintiff to disclose a material fact;
> (2) the defendant failed to disclose that fact;

9

> (3) the defendant intended to defraud or deceive the plaintiff;
> (4) the plaintiff took action in justifiable reliance on the concealment; and
> (5) the plaintiffs suffered damages as a result of the defendant's concealment.

Green v. H & R Block, Inc., 735 A.2d 1039, 1059 (Md. 1999).

Plaintiffs fail to allege sufficient facts to establish element one: that Tigo owed Plaintiffs a duty to disclose a material fact. In Maryland, "[n]on-Disclosure . . . has never been sufficient to establish fraud, in any context, absent some duty to disclose." Morris v. Osmose Wood Preserving, 667 A.2d 624, 638 n.12 (Md. 1995). In fraudulent concealment cases, a duty to disclose arises "when one party is in a fiduciary or confidential relationship with the other . . . and at times when one party makes a 'partial and fragmentary statement of fact'" that misleads the other party to his detriment. Est. of White ex rel. White v. R.J. Reynolds Tobacco Co., 109 F.Supp.2d 424, 431 (D.Md. 2000) (quoting Brager v. Friedenwald, 97 A. 515, 523 (Md. 1916)).

Here, to the extent that Plaintiffs rely on the existence of a fiduciary relationship with Tigo to establish a duty to disclose, Maryland's relaxed pleading standard under Rule 9(b) for claims of fraudulent concealment applies. However, Plaintiffs do not allege any fiduciary or confidential relationship between the parties from which a duty to disclose would arise, and therefore cannot satisfy this standard. (See Reply Supp. Mot. Dismiss ["Reply"] at 5, ECF No. 19). To the extent that Plaintiffs rely on misleading fragmentary statements of fact allegedly made by Tigo to establish a duty to disclose, Rule 9(b)'s heighted pleading standard for claims of fraud applies. See Hill v. Brush Engineered Materials, Inc., 383 F.Supp.2d 814, 822–23 (finding the relaxed Rule 9(b) standard for

10

fraudulent concealment only applies to omissions of material fact, not in cases where liability for fraud is predicated on [a] "partial and fragmentary statement of fact," which presumably can be stated with particularity). Under this standard, Plaintiffs' allegations are insufficient.

Plaintiffs do assert in the Amended Complaint that Tigo "expressly represented that Tigo developed high-quality solar equipment," including RSDs; that Tigo RSDs were "industry leading" and "extremely reliable"; and that Tigo RSDs satisfied industry safety standards and would "operate as intended for safety." (Am. Compl. ¶¶ 26–27). Plaintiffs and their contractors allegedly purchased the defective Tigo RSDs for installation at their project sites in reliance on these representations. (Id. ¶ 27). However, while the Amended Complaint generally alleges facts to support that Plaintiffs relied on these "fragmentary statement[s] of fact" to their detriment, Est. of White, 109 F.Supp.2d at 431, it does not do so with sufficient particularity under Rule 9(b). Fed.R.Civ.P. 9(b). Specifically, the Amended Complaint does not specify who made the statements—alleging only that "Tigo and its Representatives" made representations to Plaintiffs about the safety of the RSDs—or when the statements were made. (Am. Compl. ¶ 26–27). See also Hill, 383 F.Supp.2d at 823 (stating fraudulent concealment plaintiff claiming reliance on fragmentary statements of fact must specify "(1) the partial and fragmentary statements of fact that created a duty for [the defendant] to speak, (2) who made the statements, (3) when the statements were made, and (4) how [the plaintiff] came to rely on them."). Because Plaintiffs do not allege that they had a fiduciary or confidential relationship, nor do they sufficiently allege that Tigo made misleading partial or fragmentary statements of fact, they cannot establish that

11

Tigo owed them a duty to disclose a material fact, and they do not successfully plead the elements of a fraudulent concealment claim under Maryland law.[4]

Accordingly, the Motion to Dismiss will be granted as to the fraudulent concealment claim in Count IV.

### 2. Punitive Damages

Tigo also moves to dismiss Plaintiffs' claim for punitive damages. In their punitive damages request, Plaintiffs allege that Tigo was aware that its RSDs were defective and posed a serious risk of death or substantial injury, and yet Tigo deliberately disregarded this risk by continuing to market its RSDs as safe and failing to inform end users and the public of their hazardous defects. (Am. Compl. ¶¶ 205–06). Tigo argues for dismissal of the claim on the grounds that Plaintiffs do not allege sufficient facts to establish "actual malice" as is required under Maryland law for a plaintiff to recover punitive damages. (Mot. at 4, 6–7). Plaintiffs counter that requests for punitive damages are not subject to dismissal at the pleading stage under Rule 12(b)(6). (Opp'n at 7, 13–15).

---

[4] In the Amended Complaint, Plaintiffs specifically allege as to the duty element: "As a product manufacturer aware of a serious, nonobvious hazard posed by its product, Tigo owed Plaintiffs a duty to effectively warn of the risk involved with Tigo RSDs." (Am. Compl. ¶ 138). Plaintiffs confuse a manufacturer's duty to warn as it pertains to products liability with the duty to disclose as it pertains to fraudulent concealment. The two are distinct. See Waterhouse v. R.J. Reynolds Tobacco Co., 270 F.Supp.2d 678, 684–85 (D.Md. 2003) ("[I]t is clear that [plaintiff's] claim for fraudulent concealment is in large part nothing more than a failure-to-warn claim in different dress . . . . Defendants are entitled to have [plaintiff's] claims of fraudulent concealment dismissed."). Plaintiffs do not identify, and the Court could not locate, a single case where a federal Court applying Maryland law has treated the duty to warn as coextensive with the duty to disclose.

At the outset, the Court agrees with Tigo that requests for punitive damages are subject to dismissal under Rule 12(b)(6) at the pleading stage, and that to survive a Rule 12(b)(6) motion, Plaintiffs' punitive damages claim must contain sufficient factual allegations to show that Tigo acted with actual malice. However, the Court finds that the allegations in Plaintiffs' Amended Complaint are sufficient to establish actual malice for the purposes of withstanding a motion to dismiss.

Under the standard applied by Maryland courts in assessing requests for punitive damages, such damages may be awarded only where the plaintiff "has established that the defendant's conduct was characterized by evil motive, intent to injure, ill will, or fraud, i.e., 'actual malice.'" Morris v. Biomet, Inc., 491 F.Supp.3d 87, 108 (D.Md. 2020) (quoting Owens-Illinois, Inc. v. Zenobia, 601 A.2d 633, 652 (Md. 1992)). Rule 9(b) permits plaintiffs to allege malice and other conditions of a defendant's mind generally. Fed.R.Civ.P. 9(b). Importantly, however, Rule 9(b) "does not override the requirement that to survive a Rule 12(b)(6) motion to dismiss, a complaint must state a plausible claim for relief" under Rule 8. McMillan v. Kan. City Life Ins. Co., No. ELH-22-1100, 2023 WL 3901279, at *8 (D.Md June 7, 2023) (quoting Palmer v. Kirkland, No. GLR-16-2636, 2017 WL 11615522, at *4 (D.Md. June 23, 2017)). The plaintiff must prove a claim for punitive damages by clear and convincing evidence. Id. at *7.

To prove actual malice in a products liability case specifically, "the plaintiff must prove (1) actual knowledge of the defect on the part of the defendant, and (2) the defendant's conscious or deliberate disregard of the foreseeable harm resulting from the defect." Morris, 491 F.Supp.3d at 108 (quoting Zenobia, 601 A.2d at 653). "Regardless of

13

whether the cause of action for compensatory damages is based on negligence or strict liability . . . the evidence must show malicious conduct and not simply the supplying of a defective product or negligence." Id. (quoting Zenobia, 601 A.2d at 653, 655); see also Mendez v. Gen. Motors, No. JMC-22-853, 2022 WL 2333851, at *4 (D.Md. June 28, 2022) ("It is not enough for a plaintiff to generally allege that a manufacturer knew of a product defect and distributed the product anyway."); Hill, 383 F.Supp.2d at 824–25. Thus, to receive punitive damages, a plaintiff "must sufficiently allege that [the d]efendant committed either (1) fraud, or (2) another tort with actual malice." Biktasheva v. Red Square Sports, Inc., 366 F.Supp.2d 289, 295 (D.Md. 2005).

Even under Maryland's heightened pleading standard for punitive damages claims, Plaintiffs' punitive damages request puts forth sufficient facts to show actual malice and withstand dismissal. As found above, Plaintiffs fail to state a claim for fraudulent concealment and thus cannot base their claim for punitive damages on the alleged fraud. See Biktasheva, 366 F.Supp.2d at 295–96; Mendez, 2022 WL 2333851, at *4. However, Plaintiffs' Amended Complaint contains sufficient facts to plead negligence or negligent failure to warn committed with actual malice, establishing a punitive damages claim.

To begin, Tigo correctly points out that this Court, in Zenobia, 601 A.2d at 653, recognized that actual malice, which requires plaintiffs to prove "evil motive, intent to injure, ill will, or fraud, does not translate easily into products liability actions." (Mot. at 6–7). This is because in most cases, it is unlikely that a manufacturer of a defective product "would specifically intend to harm a particular consumer." Zenobia, 601 A.2d at 653. This Court further stated, though, that in products liability cases, the plaintiff satisfies the burden

14

to prove "evil motive" or "intent to injure" if the plaintiff proves "(1) actual knowledge of the defect on the part of the defendant, and (2) the defendant's conscious or deliberate disregard of the foreseeable harm resulting from the defect." Id.

Plaintiffs satisfy this burden. This Court has granted motions to dismiss punitive damages claims based on "conclusory assertions," Vales v. Preciado, No. DKC2005-3110, 2006 WL 8457080, at *14 (D.Md. July 28, 2006)) (finding allegations simply stating that defendants' "actions and/or conduct was motivated by ill will, fraud, intent to injure and/or evil motive or purpose" insufficient to prove actual malice), and where the plaintiffs fail to put forth any evidence that a defendant had any knowledge of a product defect when "the product left its possession or control." McCoy v. Biomet Orthopedics, LLC, No. ELH-12-1436, 2021 WL 252556, at *29 (D.Md. Jan. 25, 2021).

Here, as to element one of a punitive damages claim—actual knowledge—Plaintiffs' Amended Complaint contains more than mere "conclusory allegations." Vales, 2006 WL 8457080, at *14. In their request for punitive damages, Plaintiffs allege that Tigo "knew its RSDs constituted an unreasonable danger of death, personal injury, and property damage to owners and occupants of the properties where PV Systems were installed with Tigo RSDs." (Am. Compl. ¶ 207). This, without more, is insufficient to demonstrate actual knowledge by clear and convincing evidence. However, Plaintiffs have attached to their Opposition three complaints by other operators of solar installations, similarly alleging that Tigo RSDs installed at their project sites were defective and created an unreasonable fire risk. (See Oct. 4, 2022 Compl. ¶ 1, ECF No. 14-1; Oct. 26, 2022 Compl. ¶ 9, ECF No. 14-

2; May 16, 2023 Compl. ¶ 1, ECF No. 14-3).[5] While filed after the April 2022 RSD failure at the Harford County Public Schools project, each complaint describes a fire or thermal event that occurred in 2021, prior to the events at issue here. (See Oct. 4, 2022 Compl. ¶¶ 17–18 (describing fire allegedly caused by Tigo RSDs in March 2021); Oct. 26, 2022 Compl. ¶¶ 10–11 (describing fires in June 2021 and April 2022); May 16, 2023 Compl. ¶ 26 (describing thermal event in July 2021)). Moreover, the May 16, 2023 Complaint states that following the alleged July 2021 thermal event, Tigo Representatives performed site visits in August and September 2021 and approved system modifications. (Id. ¶¶ 31–34).

Taking the facts alleged in these complaints as true along with the allegations in the Amended Complaint, Plaintiffs have pleaded sufficient facts to establish that Tigo became aware of the fire hazard posed by its RSDs at some time prior to the thermal event at the Harford County Public Schools project. (See Oct. 4, 2022 Compl. ¶¶ 17–18; Oct. 26, 2022 Compl. ¶¶ 10–11; May 16, 2023 Compl. ¶ 26). True, similar to McCoy, 2021 WL 252556,

---

[5] While a court may not ordinarily consider extrinsic evidence when resolving a Rule 12(b)(6) motion, see Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011), this general rule is subject to several exceptions. For example, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to briefing for the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Courts may also consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001). Here, the three Complaints attached to Plaintiffs' Opposition are clearly integral to the Complaint in this case, which refers to "complaints" as one source of Tigo's actual knowledge of the defects with its RSDs, and there is no dispute as to their authenticity. Accordingly, the Court will consider these documents.

at *29, here, Plaintiffs do not clearly allege that Tigo had knowledge of the defects with its RSDs at the time it sold them to Plaintiffs. However, to the extent that Plaintiffs' request for punitive damages were to be predicated on negligent failure to warn, Tigo's duty to warn of hazardous defects did not end when the RSDs left its control. See Zenobia, 601 A.2d at 645 ("Generally, a manufacturer of a defective product has a duty to warn of product defects which the manufacturer discovers after the time of sale."). Thus, the lack of specification as to when Plaintiffs purchased the Tigo RSDs does not disqualify their punitive damages claim.

Plaintiffs further meet their burden to allege element two of a punitive damages claim: that Tigo exhibited "conscious or deliberate disregard of the foreseeable harm resulting from the defect" with its RSDs. Morris, 491 F.Supp.3d at 108 (quoting Zenobia, 601 A.2d at 653). In Morris, this Court found that the plaintiff failed to allege actual malice based on clear and convincing evidence. Id. at 109. The plaintiff alleged in her complaint that the defendant was aware of certain hazards posed by devices that it manufactured for use in hip replacement procedures and made false statements about the devices. Id. However, she failed to demonstrate how the statements were false or that the defendant "acted with any ill-intent" when it made the statements. Id. Further, the plaintiff alleged that when her doctor called the defendant to inquire about how best to treat a condition she allegedly developed due to the defective devices, the defendant ignored his calls. Id. The Court found these allegations insufficient to establish that the defendant acted with deliberate disregard for the consequences of known defects with the devices. Id.

The allegations in Plaintiffs' Amended Complaint provide greater factual detail to establish deliberate disregard than did the complaint at issue in Morris. In their request for punitive damages, Plaintiffs allege Tigo "deliberately disregarded the known consequences of its defective RSDs." (Am. Compl. ¶ 208). While this alone would amount to a mere "conclusory allegation" of deliberate disregard, insufficient to satisfy this element, Plaintiffs further allege that Tigo "failed to take any effective steps to communicate the risk posed by its RSDs," (id. ¶ 210), and that:

> Tigo's silence, while in possession of the knowledge of its RSDs' defects and the known consequences of the reasonably anticipated catastrophic failure of its products, shows a conscious disregard of the threat to the safety of end users, as well as building owners and occupants of the buildings with Plaintiffs' PV Systems.

(Id. ¶ 211).[6]

Earlier in the Amended Complaint, Plaintiffs note several specific instances where Tigo had the opportunity to disclose to Plaintiffs that its RSDs had caused fires at other project sites and yet failed to do so. For example, Plaintiffs state that on May 20, 2022, "[a]bout a month" after Plaintiffs notified Tigo about the RSD failures at the Harford County Public Schools project, Tigo representatives came to the project site to investigate the failures. (Id. ¶ 44). Despite receiving multiple follow ups from Plaintiffs, Tigo did not respond with feedback until June 9, 2022, and even then, Tigo did not provide warning or

---

[6] Plaintiffs also allege that Tigo "continued to market and sell its RSDs under the false and misleading representations that they are safe." (Am. Compl. ¶ 209). However, because Plaintiffs fail to specify exactly what these representations were or when they were made, these allegations are insufficient to demonstrate actual malice by clear and convincing evidence.

identify a cause for the failures. (Id. ¶¶ 45–46). Over the next two weeks, Tigo RSDs continued to fail at multiple of Plaintiffs' project sites, but when Plaintiffs informed Tigo of these failures, Tigo declined to conduct onsite testing. (Id. ¶ 48). Plaintiffs were eventually forced to shut down operation of their PV Systems for safety reasons and once again asked Tigo "for assistance in determining the cause of the [] failures." (Id. ¶¶ 53, 56). Plaintiffs received no response from Tigo until September 12, when they informed Tigo of their intent to remove all Tigo RSDs from their projects. (Id. ¶ 59). Tigo's advice, despite its knowledge of the fire hazards posed by its RSDs and knowledge that such fires had occurred at sites operated by other developers, was that Plaintiffs should not remove the remaining RSD units until after they failed. (Id. ¶ 61). While Plaintiffs did not act on this advice and thus suffered no damages as a result, taken as true with the other allegations in Plaintiffs' Amended Complaint, it is further evidence of Tigo's disregard for the potential that its defective RSDs would cause harm to Plaintiffs or the occupants of the buildings at Plaintiffs' project sites. (Id. ¶ 78) ("Tigo knew that several of Plaintiffs' project sites were occupied by schoolchildren, business owners, and other occupants. Nevertheless, Tigo willfully withheld information about the fires . . . [endangering] the life and health of the occupants."). Accordingly, Plaintiffs have satisfied their burden at this stage to establish both elements of a request for punitive damages based on clear and convincing evidence.

The Motion to Dismiss will therefore be denied as to the punitive damages claim.

### III.     CONCLUSION

For the foregoing reasons, the Court will grant Tigo's Motion to Dismiss (ECF No. 10) in part and deny it in part. The Motion will be granted as to Count IV and denied as to

the request for punitive damages. Tigo shall answer the Amended Complaint as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. A separate Order follows.

Entered this 26th day of March, 2024.

                                                                      /s/
                                          George L. Russell, III
                                          United States District Judge